IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANDRE DANSBY, #181727,          )
                                )
          Plaintiff,            )
                                )
     v.                         )     CASE NO. 2:14-CV-72-TMH
                                )          [WO]
                                )
JOSEPH McKINNES, et al.         )
                                )
          Defendants.           )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Andre Dansby

["Dansby"] in which he challenges the constitutionality of a disciplinary lodged against him in

February of 2013 by Officer Joseph McKinnes for fighting with another inmate.  Specifically,

Dansby alleges that the defendants deprived him of due process and his Sixth Amendment right

of confrontation by refusing to produce Reginald Moore, the other inmate involved in the fight,

as a witness at the evidentiary hearing.  *Complaint - Doc. No. 1* at 2-3.  Dansby further alleges

that the disciplinary action subjected him to cruel and unusual punishment.  *Id*. at 3.  Dansby

names Officer McKinnes, Warden Sandra Giles, Lt. Aundra Jackson and Sgt. Elizabeth Laseter,

all correctional officials employed at the Bullock Correctional Facility, as defendants in this

cause of action.  Dansby seeks a declaratory judgment, transfer to another level 4 facility and

monetary damages for the alleged violations of his constitutional rights.  *Id*. at 4.

The  defendants  filed  an  answer,  special  report  and  relevant  supporting  evidentiary

materials, including affidavits and the disciplinary report, addressing Dansby's claims for relief. The court thereafter informed Dansby that the defendants' special report may, at a future time, be treated as a motion for summary judgment and explained to Dansby the proper manner in which to respond to a motion for summary judgment. *Order of April 8, 2014 - Doc. No. 16*. Dansby, however, filed no response to this order. Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to

3

> sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Dansby is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984,

986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where

5

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Dansby fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

#### A. Absolute Immunity

With respect to any claims Dansby lodges against the defendants in their official

6

capacities, they are entitled to absolute immunity from monetary damages.  Official capacity

lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v.*

*Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official

capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State*

*School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984),

or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44,

59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh

Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990)

(citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama

state officials are immune from claims brought against them in their official capacities."

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are state actors entitled to sovereign immunity

under the Eleventh Amendment for claims seeking monetary damages from them in their official

capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16

F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Relevant Facts

On February 19, 2013, correctional officers McKinnes and Jackson entered the

segregation unit at Bullock and observed inmates Andre Dansby and Reginald Moore engaged

in a physical altercation.  Based on the foregoing, Officer McKinnes charged Dansby with a

violation of Rule #501, fighting without a weapon. *Defendants' Exhibit D - Doc. No. 15-4* at

3.  On February 22, 2013, Officer Cedric Faulk served Dansby with notice of the disciplinary

charge and the scheduled date for the disciplinary hearing related to this charge. *Id*. Dansby refused to sign for receipt of the disciplinary but did identify three witnesses he sought to have at the disciplinary hearing, Officer Jackson, Officer McKinnes and Reginald Moore. Upon completion of the noticed disciplinary hearing, during which Dansby had an opportunity to present evidence, provided testimony that he was "not guilty cause Inmate Moore is not here anymore[,]" and was allowed to question the witnesses present at the hearing, the hearing officer, Sgt. Elizabeth Laseter, found Dansby guilty of the charged offense. *Id*. at 3-4.[2] The sanctions imposed upon Dansby for this disciplinary infraction consisted of the loss of canteen, telephone and visitation privileges for forty-five days and placement in segregation for thirty days. *Id*. at 4.

Dansby contends that the failure to procure the presence of Reginald Moore at the disciplinary hearing deprived him of the right to confront the witnesses against him in violation of his due process and Sixth Amendment rights. *Complaint - Doc. No. 1* at 2-3. Dansby further alleges that the actions made the basis of the instant complaint constituted cruel and unusual punishment. *Id*. at 3.

### C. Lack of Requested Witness

It is undisputed that Reginald Moore was not incarcerated at Bullock on the date of the disciplinary hearing and did not serve as a witness against Dansby. It is likewise clear that

---

[2]Dansby testified that Moore was no longer incarcerated at Bullock and the hearing officer noted on the disciplinary report that Moore was not called as a witness because he had been released from Bullock upon reaching the end of his sentence. *Defendants' Exhibit D - Doc. No. 15-4* at 3-4.

Reginald Moore did not provide any information utilized as a basis for the charge lodged against Dansby; instead, the charge arose from Officer McKinnes' personal observation of the inmates engaged in a fight.   Nevertheless, Dansby contends that correctional officials violated his constitutional rights when they failed to secure Moore's presence at the disciplinary hearing. Dansby maintains that this failure deprived him of due process and violated his right to confront a witness as guaranteed by the Sixth Amendment.

1. **Due Process.**  The punishments imposed upon Dansby for the challenged disciplinary infraction were forty-five days loss of store, telephone and visitation privileges and confinement in disciplinary segregation for thirty days.  *Defendants' Exhibit D - Doc. No. 15-4* at 4.  Under the circumstances of this case, Dansby's due process claim entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.   "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,*

515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state."  *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Sandin*, 515 U.S. at 485-486 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (prisoner has no constitutional right to be confined in a particular institution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him.  *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").

10

In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the deprivations imposed upon Dansby based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. This court must therefore determine whether the actions about which Dansby complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of

confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of canteen, telephone and visitation privileges and short-term confinement in segregation "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, the plaintiff's due process claim fails under the law as established in *Sandin*.[3]

**2. <u>Sixth Amendment</u>.** The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." "The Sixth Amendment right to confront one's accusers is available

_____

[3]Even assuming a right to due process in the challenged disciplinary proceeding, the failure to provide a free world witness at the disciplinary hearing did not violate this right. The plaintiff concedes that the hearing officer allowed testimony from the two other individuals identified as witnesses and these individuals were the only witnesses at the hearing. In addition, it is clear that the hearing officer had no power to compel the attendance of Reginald Moore as Moore had been released from prison. While it is true that *Wolff* recognized an inmate's right to call witnesses and submit documentary evidence, that decision does not afford prisoners unlimited rights to call witnesses or submit evidence in disciplinary hearings. The Court in *Wolff* acknowledged that prison officials have the "extraordinarily difficult" task of operating correctional institutions, which necessarily entails the responsibility for the safety of staff and inmates and was reluctant to extend to prisoners the "unqualified right to call witnesses" in prison disciplinary proceedings. Instead, the Court extended to prison officials the "necessary discretion" to place limits on an inmate's right to call witnesses or present documents and made it clear that prison authorities must be allowed to maintain flexibility in the way they conduct disciplinary hearings. *Wolff*, 418 U.S. 566-567. The Court further noted that an unrestricted right to call witnesses carries "the potential for disruption" and that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority." 418 U.S. at 566. In light of the foregoing, it is apparent that the plaintiff's allegation does not indicate that he was deprived the minimum due process required by *Wolff* and therefore does not state a due process claim.

only in criminal trials.  'Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.'  *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Taylor v. Wallace,* 931 F.2d 698, 701 (10th Cir.1991) ('*Wolff* does not require the confrontation and cross-examination of witnesses in prison disciplinary proceedings.')."  *Kucera v. Terrell*, 214 Fed.App'x. 729, 730 (10th Cir. 2006); *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir.), *cert. denied* 513 U.S. 926 (1994) ("[A] prison disciplinary proceeding is not a criminal prosecution. Prisoners in this context do not possess Sixth Amendment rights to confront and cross-examine witnesses.").  It is therefore clear that no violation of the Sixth Amendment occurred as "the Sixth Amendment does not guarantee prisoners the right to confront their accusers in a disciplinary hearing."  *Kucera*, 214 Fed. App'x. at 730.

### D.  Cruel and Unusual Punishment

To the extent Dansby alleges that the actions of the defendants subjected him to cruel and unusual punishment, this claim is likewise without merit as the Eighth Amendment proscribes only those actions which deprive an inmate of "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).  "'[T]he Constitution does not mandate comfortable prisons.'  *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'  *Id.* at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'  *Id.*"  *Chandler v. Crosby*,

13

379 F.3d 1278, 1289 (11th Cir. 2004).  The initiation of disciplinary action against Dansby for fighting with another inmate and the punishments imposed upon him after the determination of guilt do not constitute sufficiently grave deprivations so as to deprive Dansby of a right protected by the Eighth Amendment.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  Costs be taxed against the plaintiff.

It is further

ORDERED that **on or before August 13, 2014**, the parties may file objections to this Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court

14

except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  See also *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 30th day of July, 2014.


          /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE